IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA C.,[1] | ) |
|     Plaintiff, | ) |
| | ) No. 25 C 2146 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[2] | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court is Cynthia C.'s motion for summary judgment (D.E. 18), her memorandum requesting the Court reverse and remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") (D.E. 19), Defendant's memorandum in support of his motion for summary judgment to affirm the ALJ's decision (D.E. 20), and Plaintiff's reply (D.E. 21).

**I.  Procedural History**

Plaintiff applied for SSI and DIB on September 23, 2021, alleging a disability onset date of August 1, 2021. (R. 15.) The ALJ held a hearing on August 7, 2023, and issued a written decision on September 13, 2023, denying Plaintiff's applications and finding her not disabled

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Frank Bisignano for his immediate predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 21, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 16.)

under the Social Security Act (the "Act") from her alleged onset date of August 1, 2021, through the date of the opinion, September 13, 2023. (R. 15-25.)[4] This appeal is of that final decision.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claim. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 1, 2021. (R. 17.) At Step Two, the ALJ determined that Plaintiff had severe impairments of: chronic obstructive pulmonary disease (COPD), hypertension, depression, and anxiety. (*Id.*) The ALJ also determined that Plaintiff had non-severe impairments of heart failure and supraventricular tachycardia. (*Id.*) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or medically equal any Listing. (R. 18-19.) The ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work with additional limitations, in relevant part, as follows:

> The claimant is able to perform simple, routine tasks and make simple work-related decisions. She can have occasional interaction with supervisors, co-workers, and the public.

(R. 19.) At Step Four, the ALJ found that Plaintiff could not perform her past relevant work as a home attendant, sales clerk, or janitor. (R. 23.) Based on the vocational expert's testimony at the hearing, at Step Five, the ALJ determined that with her RFC, Plaintiff would be able to perform a significant number of jobs in the national economy, and thus that she was not disabled under the Act. (R. 24-25.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

### III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. *See also Padua v. Bisignano*, 145 F.4th 784, 789 (7th Cir. 2025) (stating that the district court's review of the ALJ's opinion will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's"); *Cain v. Bisignano*, -- F.4th --, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (describing reviewing court's role as "extremely limited"); *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025) (reiterating that Seventh Circuit "review proceeds with a light touch—not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit also has made clear that on its own review of district court decisions reviewing ALJ opinions for substantial evidence, district courts have a similar "minimal articulation" requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**IV.     Analysis**

Plaintiff contends the ALJ erred by failing to consider evidence as to her limitations in concentration, persistence, pace, and interaction with others. (D.E. 19: Pl. Mem. in Supp. of Reversing the Decision of the Commissioner ("Pl. Mem.") at 6.) First, Plaintiff claims the ALJ's discussion of her April 2022 psychological consultative exam with Dr. Laura J. Higdon, Ph.D. ("Dr. Higdon") was inadequate in that the ALJ "never weighed" this evidence. (*Id.* at 9.) Second, Plaintiff argues the ALJ violated SSR 96-8p (*id.* at 6) because the ALJ did not mention "abnormal findings in the therapy and treatment records" beyond "stray" references. (*Id.* at 9-10.) The Court disagrees as to both points.

    **A.     The ALJ Did Not Err In His Discussion of The Evidence From Dr. Laura J. Higdon, Ph.D.**

Plaintiff's memorandum alleges that the ALJ "never weighed" the evidence from Dr. Higdon and that "[t]he [ALJ's] decision is devoid of any discussion of the actual content and mental status exam findings contained in Dr. Higdon's evaluation." (Pl. Mem. at 7-9.) But the ALJ cited Dr. Higdon's report throughout the Step Three analysis, and the ALJ's discussion reveals the ALJ incorporated the observations within Dr. Higdon's report throughout the function-by-function assessment of Plaintiff's mental RFC. (R. 18-19, citing R. 519-22.) *See Morales*, 103 F.4th at 471 (providing that the ALJ must supply enough information to allow the Court to follow the material reasoning underpinning the decision). An ALJ's opinion should be read holistically, not in isolation based on the "steps." *See Thorlton,* 127 F.4th at 1082; *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021); *Jeske v. Saul*, 955 F.3d 583, 589-90 (7th Cir. 2020).

At Step Three, the ALJ obviously relied on Dr. Higdon's report in discussing the function-by-function analysis of Plaintiff's mental RFC, as Plaintiff herself admits. (Pl. Mem. at 8 (discussing that the ALJ explicitly cited Dr. Higdon's report throughout Step Three).) For example,

4

the ALJ assessed Plaintiff as having moderate limitations in interacting with others, and the ALJ discussed how "the medical evidence show[ed] that the claimant was described as pleasant and cooperative and appeared comfortable during appointments." (R. 19, citing R. 519-22.) The ALJ's discussion is clearly tied to Dr. Higdon's observations that during her April 14, 2022, visit, Plaintiff was pleasant, cooperative, and anxious, but that Plaintiff made "adequate eye contact" and her demeanor was "appropriate despite her anxiety." (R. 519.) Additionally, the ALJ assessed Plaintiff as having moderate limitations in concentration, persistence, and pace, and the ALJ discussed how Plaintiff said that she is "able to prepare meals, watch TV, and handle her own medical care" and that "the record fail[ed] to show any mention of distractibility." (R. 19, citing R. 519-22.) Here, the ALJ's discussion dovetails with Dr. Higdon's observations that at the April 14, 2022, visit, Plaintiff's thought processes were "intact" (R. 521) and that Plaintiff "show[ed] adequate cognitive functioning." (R. 522.) Overall, the ALJ determined that Plaintiff did have severe impairments of depression and anxiety (R. 17), in line with Dr. Higdon's assessment of panic disorder and adjustment disorder with depressed mood (R. 522).

Further, the Court is not convinced that Dr. Higdon's report constitutes a medical opinion under the rules because Dr. Higdon did not set forth specific functional limitations for Plaintiff in her report. *See* 20 C.F.R. § 404.1513(a)(2) (defining a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions."). Regardless, Dr. Higdon's report was included in the materials reviewed by the state agency psychological consultants who *did* opine about functional limitations for Plaintiff (R. 60, 86-87), which the ALJ properly evaluated as medical opinion evidence before adopting those limitations supported by Plaintiff's objective medical evidence (R. 22-23), as discussed further in Section IV.B below. With ALJs "subject to

5

only the most minimal" of articulation requirements so that they need only supply "an explanation for how the evidence leads to their conclusions," *Warnell*, 97 F.4th at 1053-54, the ALJ's discussion of the evidence from Dr. Higdon supplies enough for the Court to follow the ALJ's reasoning and determine that it was supported by substantial evidence.

Accordingly, the ALJ did not err in his discussion and evaluation of the evidence from Dr. Higdon.

    **B.**    **The ALJ's Conclusions As to Concentration, Persistence, and Pace and Ability to Interact With Others Were Supported By Substantial Evidence.**

Plaintiff also contends that her RFC as assessed by the ALJ violated SSR 96-8p because the ALJ was required to provide a more detailed assessment of her RFC. (Pl. Mem. at 6.) Specifically, Plaintiff claims the ALJ should have "itemize[d] various functions contained in the broad categories found in paragraphs B and C" of the Listings. (*Id.*) SSR 96-8p requires an ALJ to describe how specific medical facts and nonmedical evidence support the ALJ's conclusions. *Krug v. Saul*, 846 F. App'x 403, 406-07 (7th Cir. 2021), citing *Jeske*, 955 F.3d at 595-96. Here, the ALJ assessed Plaintiff as having moderate limitations in concentration, persistence, and pace as well as interaction with others; no limitations in understanding, remembering or applying information; and mild limitations in her ability to adapt or manage herself. (R. 18-19.) The ALJ determined that with these limitations, Plaintiff would be able to perform light work with additional limitations to simple, routine tasks and work-related decisions, as well as occasional interaction with supervisors, co-workers, and the public. (R. 19.) As the discussion below reflects, the Court is satisfied the ALJ considered each function in assessing Plaintiff's mental RFC, and Plaintiff does not take issue with the assessment of her limitations in understanding, remembering or applying information or her ability to adapt or manage herself. (*See* Pl. Mem. at 6.)

i. **Concentration, Persistence, and Pace**

Plaintiff argues the ALJ's decision "overlooks other evidence that would limit concentration, persistence, and pace" such as therapy records and "complaints of impaired memory and forgetfulness." (Pl. Mem. at 9.) The Court disagrees.

The Seventh Circuit has held that the "ALJ's RFC determination limiting [a claimant] to performing simple, routine, and repetitive tasks is consistent with [] moderate limitations" in concentrating, persisting, or maintaining pace. *Cain*, 2025 WL 2202133, at *5, citing *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("[A] 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."). Although the Seventh Circuit does not require specific phrasing with respect to moderate limitations in concentration, persistence and pace, *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), "[t]he ALJ's residual functional capacity assessment must incorporate all of the claimant's limitations supported by the medical record, including limitations in concentration, persistence, or pace." *Moy v. Bisignano*, 142 F.4th 546, 552-53 (7th Cir. 2025) (internal quotations omitted). As the Seventh Circuit explained in *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019), "even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record."

In this case, the medical record contains little evidence beyond Plaintiff's subjective complaints as to her limitations caused by her depression and anxiety, and the ALJ provided more than enough "explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054. The ALJ discussed Plaintiff's

testimony that she has anxiety and daily panic attacks triggered by heat or loud noises, as well as her testimony that she has poor memory, trouble concentrating, and a rapid heartbeat at times. (R. 20.) On review of the record, the ALJ noted that Plaintiff was prescribed Xanax after she was diagnosed with "anxiety state" following an emergency room visit for chest pain in 2021. (R. 21.) The ALJ relayed that Plaintiff continued to take Xanax as needed and that Plaintiff's symptoms would resolve within 10 minutes of taking the medication. (*Id.*) Further, the ALJ discussed that Plaintiff attended group counseling sessions at the Welcoming Center where she was "generally engaged during these sessions, and presented as open, in good spirits, and empathetic towards others." (*Id.*) The ALJ also discussed that Plaintiff told her counselor that "the combination of medication and therapy had 'significantly' helped her to manage her anxiety symptoms" and that since her quarterly review in March 2023, Plaintiff had "continued with her group and individual therapy sessions" and was generally "pleased to share her story of the progress she had made." (R. 22.) After acknowledging Plaintiff's symptoms and discussing her course of treatment (R. 20-22), the ALJ determined that despite any difficulties with her symptoms of depression and anxiety, Plaintiff could maintain the concentration necessary to perform simple tasks. (R. 23.)

Plaintiff argues that the ALJ should have concluded that the evidence of her symptoms of depression and anxiety resulted in more severe limitations than those in the RFC, *i.e.* that the ALJ should have weighed the evidence differently and thus come to different conclusions about Plaintiff's abilities. But the Court's review of the ALJ's opinion will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination. *See Chavez*, 96 F.4th at 1021. Here, the ALJ explained that he accommodated Plaintiff's anxiety and depression with moderate limitations in concentration, persistence, and pace. (R. 19.) Specifically, the ALJ considered Plaintiff's contention that "she has

8

limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule" and compared this against Plaintiff's testimony that "she is also able to prepare meals, watch TV, and handle her own medical care." (*Id.*) The ALJ also discussed that "the record fails to show any mention of distractibility." (*Id.*) This is enough to allow the Court to trace the evidence of Plaintiff's anxiety and depressive symptoms to the RFC's limitation in concentration, persistence, and pace, and the ALJ's determination was thus supported by substantial evidence.

Plaintiff has pointed to no evidence which supports her contention that her symptoms "could foreseeably be disruptive to the workplace, caus[ing] Plaintiff to be off-task or require accommodations away from the workstation" (Pl. Mem. at 12), and "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other subjective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022), citing 42 U.S.C. § 423(d)(5)(A)); *Thorlton*, 127 F.4th at 1080 (Plaintiff bears the burden of proving disability through objective medical evidence). The ALJ's review of the record revealed Plaintiff's conservative mental health treatment, combined with her own admission that her symptoms significantly improved with therapy and medication, led the ALJ to conclude that Plaintiff's symptoms were not as severe as alleged through her subjective statements. (R. 22.) *See Crowell v. Kijakazi*, 72 F.4th 810, 817 (7th Cir. 2023) (affirming ALJ decision that explained claimant's mental health conditions improved and were well-controlled with medication); *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (finding ALJ entitled to consider that treatment was conservative in determining claimant was not disabled). The Court will only overturn the ALJ's evaluation of a claimant's subjective systems "if it is patently wrong, which means that the decision lacks any

9

explanation or support," *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024), and Court will not disturb the ALJ's determination here.

### ii. Interaction With Others

Finally, Plaintiff asserts that "the ALJ's RFC departs from the State Agency psychological consultants in finding that she could have occasional interaction with coworkers, supervisors and the public." (Pl. Mem. at 13.) Generally, under 20 C.F.R. § 404.1520c, the most important factors for the ALJ to evaluate in determining the persuasiveness of medical opinion evidence are supportability and consistency, both internally and with the record as a whole. The ALJ must also consider the treating practitioner's relationship with the claimant, specialization, as well as other factors, but an explanation of the ALJ's consideration of these additional factors does not need to be presented within the ALJ's opinion. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ reviewed the opinions of the state agency psychological consultants that Plaintiff "would need no contact with the public and minimal contact with supervisors and co-workers" (R. 22) and determined the opinions of the state agency psychological consultants were unpersuasive "since their determination of the 'B' criteria and resultant limitations are not fully supported by [Plaintiff's] health records." (R. 23.) Elaborating further, the ALJ remarked that his review of the record revealed "no evidence that [Plaintiff] has the type of social difficulties that would require minimal contact with co-workers and supervisors and no contact with the public." (*Id.*) This was sufficient for the ALJ to find the medical opinions of the state agency psychological consultants unpersuasive as to their assessment of Plaintiff's ability to interact with others. *See Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (finding the ALJ met the consistency prong by evaluating claimant's subjective statements against the treating physician records and the remainder of medical records).

Further, Plaintiff argues that there "is significant evidence in the record that [Plaintiff] avoids public areas and socially isolates herself in the home." (Pl. Mem. at 14, citing R. 39, 228, 520, 1368, 1408, 1455.) Yet this evidence stems only from her subjective complaints. (*See* R. 39 (Plaintiff's hearing testimony), 228 (Plaintiff's self-executed Function Report), 520 (Dr. Higdon's report of Plaintiff's statements on consultative exam), 1368 (Plaintiff's statements from her June 21, 2022, initial assessment at the Welcoming Center), 1408 (Plaintiff's statements from her December 12, 2022, diagnosis report at the Welcoming Center), 1455 (Plaintiff's statements from a May 18, 2023, phone call with the Welcoming Center).) Once again, the Court cannot take these subjective statements at face value. *See Grotts*, 27 F.4th at 1278. Although Plaintiff alleges that "[w]orking with unfamiliar people or in stressful personal interactions *may* cause Plaintiff to have a panic attack or leave the workstation" (Pl. Mem. at 14 (emphasis added)), Plaintiff does not point to any evidence in the record that any such panic attack or departure of a workstation has occurred due to her symptoms of depression and anxiety, and Plaintiff bore the burden of proving her disability through objective medical evidence. *Thorlton*, 127 F.4th at 1080.

In addition, the non-examining state agency opinions expressly considered Dr. Higdon's assessment of Plaintiff, as well as Plaintiff's overall treatment records, and the ALJ considered and weighed those state agency opinions. (R. 22-23.) The ALJ also discussed Plaintiff's functional limitations as to understanding, remembering, or applying information and her ability to adapt or manage herself (R. 19), but Plaintiff does not take issue with those assessments in her brief. The ALJ opinion therefore is supported by substantial evidence, in that the ALJ simply weighed Dr. Higdon's observations (and the state agency opinions that had considered them) differently than Plaintiff prefers. The Court declines this invitation to reweigh the evidence. *See Chavez*, 96 F.4th at 1021.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment (D.E. 18) and grants Defendant's motion for summary judgment (D.E. 20).

**SO ORDERED.**

                                         **ENTER:**

                                         **GABRIEL A. FUENTES**
                                         **United States Magistrate Judge**

**DATED: September 2, 2025**